In re MANDALAY SHORES COOPERA-
TIVE HOUSING ASSOCIATION,
INC., Debtor.

Bankruptcy No. 86–1183–BKC–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 20, 1988.

Malka Isaak, Tampa, Fla., for debtor.

William Borja, Clearwater, Fla., for movant.

## ORDER ON REHEARING OF ORDERS ON OBJECTION TO CLAIMS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is the third Motion for Rehearing filed by Walter N. Smith and a group of claimants who, at times, describe themselves as "equity security holders," even though it is evident that this Debtor does not, and never did, have any holders of equity security interest, being a non-profit corporation. Walter N. Smith and the others are all former members of the Mandalay Shores Cooperative Housing Association, Inc. (Association), the Debtor in this case. The motion filed by Walter N. Smith and the other claimants is addressed to a previous Order entered by this Court which disallowed the interest portion of their claims but overruled other objections interposed by the Association which sought the total disallowance of these claims on several different legal theories.

It is the contention of Walter N. Smith and others that they are entitled to have their claims allowed with interest based on a contract, either written or oral. In sup-

port of this proposition they urge that the receipt given by the Association to the members when they made their initial contribution to the Association provided for a refund of the contribution, plus interest. In addition, it is also contended that the president of the Association, Mr. Burr, clearly promised orally several times that the members who desired to leave the Association would be entitled to receive the money which they had contributed and would receive interest on same.

The facts which are basically without dispute and which appear from the extensive record of not only this Chapter 11 case but also the previous Chapter 11 cases are as follows.

At the time pertinent to the matter under consideration, the apartment complex, known as Mandalay Shores Apartments, was owned by the Department of Housing and Urban Development (HUD), an Agency of the United States Government. Sometime in the summer of 1979, it appeared that HUD was about to sell the complex to a private entrepeneur, and the tenants of the complex became apprehensive that if this occurred the new owner most likely would turn the complex into a condominium project or at least after acquisition would raise the rent of the tenants to such extent that some of the tenants would not be able to remain as tenants in the complex.

In order to prevent this from occurring, in August, 1979, Mr. Jack Burr proposed the creation of an entity for the purpose of negotiating with HUD for the purchase of the complex on behalf of the tenants. In fact on August 7, 1979, a non-profit corporation was formed comprised of the tenants as the members of the Association who lived in the Mandalay Shores Apartments at that time. Pursuant to the original by-laws of the Association organized as a non-profit corporation was formed for the sole purpose of acquiring ownership of the complex from HUD and operating the same as a cooperative housing facility giving the tenants control over the operation and, most importantly, to assure that the rents of the members would not be raised, or at least they would be stabilized at a level

which the members would be able to afford. It was proposed first that the tenants who joined the Association would have an option to buy a full membership in the Association or place monies in escrow, which funds were to be refunded in the event the Association was unable to purchase the complex according to the by-laws. A full membership was available only to the tenants who actually lived in the building but escrow membership was also available to all who desired to become members, whether they lived in the complex or not. The funds needed for the down payment for the proposed purchase were collected without any difficulty and the parties who contributed funds were given a receipt, which in pertinent part, reads as follows:

> "As you were informed at our general meetings, by unanimous vote your membership certificate when issued after the title to Mandalay Shores Apartment is acquired cannot be sold by you, but you will have the right to surrender the same together with possession of your apartment to the Cooperative Association and will receive full redemption payments including any interest which may have accrued thereon. You are also informed by unanimous vote that in order to prevent any forfeiture of our $100,000 earnest money paid to HUD with our offer on August 10, 1979, there cannot be any redemption of any shares until after HUD accepts our offer and title passes to your co-op. In the event HUD rejects our offer, you will be called to a general meeting of all members to vote and decide our next step to protect our interest and lifestyle here at Mandalay Shores Apartments."

The Association was unsuccessful in purchasing the building from HUD and the complex was ultimately sold by HUD to a private entity. When it became apparent that the Association lost all chances to acquire the project, several members demanded refunds of their contributions. Although some received a refund, Walter Smith and other members of the Association who demanded a refund did not receive a refund of their contribution. In fact, a group headed by Ms. Fulton, all who con-

tributed funds to the Association for the purpose of acquiring ownership of the complex from HUD, actually filed a suit against the Association and its officers in the Circuit Court in and for Pinellas County in which they sought a refund from the Association of their contributions, and damages on various grounds. In light of this development, the Articles of Incorporation of the Association were amended at the urging of Mr. Burr at a membership meeting at which the dissident members were excluded. The amendment broadened the original stated purpose of the Association—to include as one of the purposes of the Association, the acquisition of another facility, not specified, in order to provide housing to its members.

The Association, having been faced with the suit filed by the Fulton Group in which the Circuit Court actually appointed a receiver for the assets of the Association, i.e., the funds collected from the members, filed its first Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in this Court in April, 1981. In spite of repeated attempts to achieve the confirmation of the several plans of reorganization, the Association failed to accomplish this goal, primarily due to the opposition of the dissident members headed by Walter Smith. As the result on September 11, 1985, this Court entered an Order and denied confirmation of the latest plan of reorganization entitled Modified Plan for an Arrangement, filed June 22, 1984, on the grounds that the Modified Plan did not meet the standard for confirmation required by § 1129 of the Bankruptcy Code inasmuch as the Plan submitted did not provide payment in full for Walter N. Smith and others of their claims limited to the amounts actually contributed, plus interest. However, the Court granted the Association 30 days to file an amended plan to meet the defects which were found to exist in the Modified Plan of Reorganization. The Order further provided that in the event that the amended plan was not filed within the time fixed or the case was not converted voluntarily to a Chapter 7 liquidation case, the Chapter 11 case would be dismissed. These alternatives were inescapable in light of the fact that the Association, being not a monied corporation, thus an entity not subject to be an involuntary debtor by provision of Section 303(a) of the Bankruptcy Code.

The Debtor having failed to file an amended Plan of Reorganization this Court entered an Order on October 24, 1985 and dismissed the Chapter 11 case of the Association.

On November 4, 1985, the Association filed its second Voluntary Petition for Relief under Chapter 11 in the Northern District of Illinois, even though the only nexus the Association had in that District was the funds collected from the members which were deposited in an Illinois banking institution in an interest bearing account. It took no time for the Bankruptcy Court in the Northern District to grant the Motion to Dismiss the second Chapter 11 case filed by Walter N. Smith, et al and on December 19, 1985, the second Chapter 11 case filed by the Association was dismissed. On appeal, the Order of Dismissal was affirmed by the District Court.

On November 13, 1985, or about 21 days after the dismissal of the first Chapter 11 case, Walter Smith, et al filed a Motion to Intervene in the Circuit Court lawsuit filed by Ms. Fulton and other dissident members. This Motion was denied by the Circuit Court on March 7, 1986.

On March 31, 1986, the Association filed its third Chapter 11 case. Subsequently, Walter N. Smith, et al filed their proofs of claim in this third Chapter 11 case just as they did in the first Chapter 11 case based on their contributions made to the Association back in 1981, and sought a refund, together with interest computed from the date of their contribution up to the date of the filing of the Association's third Chapter 11 petition. In due course the Association filed objections to the claims of Walter N. Smith and the other former members and sought a disallowance of their claims, the matter presently under consideration by this Court. As noted earlier, the objections were considered previously and were originally overruled, but by virtue of the last order, reconsidered and allowed the claims albeit without interest.

In support of the objection to these claims the Association contends again:

(1) that these claims are time barred by the Statute of Limitations Chapter 95.11 of the Florida Statutes, and § 108(c)(2) of Title 11 U.S.C.;

(2) that the claimants have availed themselves of the benefits of their membership in the Association, and therefore they are estopped from asserting any claims against the Association on equitable grounds;

(3) that the interest on their claims even if allowed includes unmatured interest and hence not allowable pursuant to § 502(b)(2) of the Bankruptcy Code, moreover there was no contract for payment of interest existed between the Association and Walter Smith, et al;

(4) that the Association being a not-for-profit corporation created pursuant to Chs. 617.01, 617.011 and 617.10, of the Florida Statutes, is bound by provisions of these Statutes, one of which prohibits any distribution of income or corpus to members or directors of the Association. Moreover, so contends the Association, the District Court in Illinois, in an action filed by the Association, already determined that the Association is a tax exempt organization under § 501(c) of the Internal Revenue Code and as such cannot as a matter of law make distribution to members of the income earned by the Association on the funds contributed by the members of the Association without jeopardizing its tax exempt status.

At the duly scheduled and noticed hearing on objections to these claims, counsel for Walter N. Smith, et al represented to the Court that he was appearing on behalf of all of the dissident members of the Association and not only on behalf of Walter N. Smith and he was properly retained by the other dissident members.

At the conclusion of the hearing this Court entered an Order on the Objections to Claims filed by the Association. The Court overruled the objections based on the Statute of Limitations and ruled that the claimants were entitled to interest on their claims from the date of their deposit up until the filing of this case. The Court deferred ruling on the objections based on the defense of estoppel and continued the hearing on that matter until a later time. It further appears that the Court also took under advisement the effect, if any, of the decision of the District Court in the Northern District of Illinois concerning the Association's tax exempt status and the impact of that decision on the rights of these claimants to interest on their contributions made to the Association.

This Order generated several Motions for Rehearing by the Association. In its Motions the Association contended that the Order was inconsistent with the Court's previous ruling on the issue of interest. In addition, the Association also sought a determination that the part of the Order which referred to unidentified creditors, as "et al" in the phrase "Walter N. Smith, et al", should be stricken. The Motions for Rehearing were granted and subsequently Orders were entered striking any reference to unidentified creditors in the Court's previous order as "et al" and disallowing any interest on the claim of Walter Smith. As noted earlier that at some time prior to this last hearing, the Court already heard the objection to these claims based on doctrine of estoppel and entered an order overruling the objection based on that theory because there was no evidence of any detrimental reliance on the part of the Association on any conduct by these claimants to sustain an objection based on estoppel.

The current Motion for Rehearing filed by Walter Smith, et al alleges that the use of words "et al" only served to reflect that the attorney for Walter Smith represents, in addition to him, several other former members and the use of the words "et al" has been continuously used throughout this case and also in the previous Chapter 11 cases. Thus, their identity is known to all, including to the Association. In addition, Walter Smith asked that the Court rehear the Order which disallowed their claim for interest. The Court granted the Motion for Rehearing as to the interest issue only. However, at the hearing the Association again attempted to raise the previously asserted bases for its objections, i.e., Statute

of Limitations and Estoppel and the impact of the tax exempt status of the Association on those claimants to right to interest in light of the fact that this Court's previous disposition of these defenses were correct and there was nothing ever presented in support of these propositions, this Court will reaffirm its previous position and will no longer consider these defenses.

This leaves for consideration whether or not these claimants are entitled to have their claim allowed limited only to the principal contribution or are entitled to interest on their claims and if so for what time period and at what rate should the interest be calculated if interest is allowed.

■ It is the contention of Walter Smith and the others that they had a contract with the Association which provided that they will be entitled to the return of their deposit placed with the Debtor with interest upon request. The right to receive a refund with interest is based on the receipts, claimed to be a contract, which were given to the members when they initially made their contributions. The reliance on these receipts as a document which gives the right to receive a refund with interest is obviously misplaced for the following reasons:

It is important to note first that the receipt expressly stated that membership certificates when issued by the Association *after* (emphasis added) title to Mandalay Shores Apartment is acquired, cannot be sold. Second, a fair reading of the receipt clearly justifies the inference that the receipt only indicated an intent to make a refund with interest to a member *after* title to the complex was acquired. This should be apparent based on the fact that had the Association refunded all or most of the contributions made by members *before* the acquisition of the complex (emphasis supplied), then the sole purpose of the entire undertaking of the Association would have been frustrated. Even a cursory reading of the receipt indicates that the right to a refund with interest was specifically conditioned upon an occurrence of an event which never occurred, to wit, the acquisition of title to the complex by the Association.

Whether or not Walter Smith and the others would be entitled to a refund with interest on the theory of promissory estoppel or on the alleged oral promises made by Mr. Burr, the president of the Association, cannot be considered by this Court at this time for the simple reason that the tape recorded meeting at which time these alleged promises were made, are not properly before this Court. While the tape was previously proffered to be introduced into evidence and in fact has been marked for identification it was never admitted into evidence. Therefore this Court cannot take judicial notice of its contents.

Based on the foregoing, this Court is satisfied that the objections to the claims of Walter Smith and the others, (not only to receive a refund of the initial contribution, but also to receive interest) must be sustained based on the written contract or on the so called alleged oral contract or on the theory of promissory estoppel.

■ This leaves for consideration the question whether or not under the applicable local law is one entitled to the interest of monies which were placed with another on the theory of recission for failure of consideration of the contract. In opposing the right of these claimant's to interest on this theory the Association relies on the case of *Paradis vs Second Avenue Used Car Co.*, 61 So.2d 919 (S.Ct.Fla.1952). Even a cursory reading of *Paradis* indicates that the Debtor's reliance on this case is totally misplaced. The issue for determination in *Paradis* was whether or not vendors were entitled to retain the earnest money paid on a contract for realty as liquidated damages. This Court is satisfied that *Paradis* is not controlling and therefore rejects the Debtor's assertion that interest cannot be allowable under a theory of recission.

While it is true that a denial of interest may be appropriate on equitable principles where the defendant did not have control or beneficial use of the deposited funds, see *32 Fla.Jur.2d, Interest & Usury*, the converse of this would allow interest on deposited funds where the defendant did

exercise control and obtained beneficial use of the monies.

In the present instance the funds contributed by the members were placed in an interest earning account in a Chicago bank and constantly earned interest. The funds were never placed in an escrow account and were, technically, at all times available to the Association to be used during all these years, but for the pendency of the several Chapter 11 cases during which the Association was subject to the ordinary legal restrictions placed on the use of the funds, a restriction which is placed on all Debtors-in-Possession in Chapter 11 in general. The fact of the matter is and the Court takes judicial notice of the same that the funds were actually used to pay, with Court approval, the cost of administration of the first Chapter 11 case. Be that as it may, this Court is satisfied that if the interest claimed by Walter Smith and the others is not recognized by this Court, the interest earned on the original principal sum of $880,000.00 would inure to the benefit of the Association. This certainly would be a totally unacceptable result, a grossly unfair windfall to the Association who, through legal manuverings frustrated the claims for refund of these claimants for almost ten years. The fact that this result may produce adverse or negative tax consequences either to the claimants or to the Association, a matter not entirely clear is certainly not relevant to the matter under consideration. In any event, this Court is not prepared to address this question at this time.

One last comment. It was evident to this Court almost from the very beginning that the interest of all parties of interest would have been served only by an immediate total liquidation of all assets of the Association, that is, a distribution of the monies collected from the members after it became evident that the Association became unable to purchase the Mandalay Shores Apartment complex. Unfortunately, this is not what occurred and after an innumerable amount of hours expended by an army of attorneys, the affairs of this Association are still in disarray, and the dissident members are still waiting to recover the monies contributed by them. Many of them already have died and unless this Association proposes a plan which provides for a refund with interest for the dissident members, there is no end in sight simply because the alternatives are frightening and still unacceptable to this Court. This is so because a dismissal would have no doubt made certain that the dissident members not only will not receive interest on the funds, but will not ever receive a dime of the monies contributed. Since, as noted earlier, the Association is not amenable to involuntary liquidation, being a non-monied corporation under Section 303 of the Bankruptcy Code, the only equitable solution is to allow the claims of the dissident members with interest in the hope that the Association management will see the light and propose a confirmable plan and finally bring an end to this very protracted administration of this third Chapter 11 case which, hopefully, will be the last.

Based on the foregoing, this Court is satisfied that the previous Order entered on January 13, 1988, which held that Walter Smith and the other members similarly situated are not entitled to have their claims allowed with interest was incorrect and should be vacated and set aside and their claims as filed should be allowed with interest.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the objections of the Debtor to the claims of Walter Smith and the other dissident members self described as "Equity Security Holders" be, and the same are hereby, overruled and their claims be, and the same are hereby, allowed with interest to be computed from the date of demand of the refund, i.e., February 15, 1981, until March 31, 1986, the date of the filing of the third Chapter 11 case by this Debtor.